IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:24-HC-2075-M

| | | |
|---|---|---|
| ROBERT L. HODGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on respondent's motion for summary judgment [D.E. 8]. Petitioner responded in opposition. For the reasons stated below, the court grants respondent's motion.

## BACKGROUND

On July 10, 2017, petitioner was indicted for three counts of breaking and entering, three counts of larceny after breaking and entering, two counts of obtaining property by false pretenses, and one count of felonious possession of stolen goods. State v. Hodge, 840 S.E. 2d 285, 287 (N.C. App. 2020); (Resp't Ex. 1 [D.E. 10-1] at 17–21).[1] A trial was held on the charges from April 9 to 12, 2018. Hodge, 840 S.E. 2d at 287. At the close of state's evidence, petitioner moved to dismiss the charges of breaking and entering, larceny after breaking an entering, and one count of obtaining property by false pretenses. Id. The court granted the motion and dismissed the charges. Id. On April 12, 2018, the jury found petitioner not guilty of felony breaking and entering and felony larceny, but found him guilty of one count of obtaining property by false pretenses and of the lesser included offense of misdemeanor possession of stolen goods. Id.

---

[1] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

After the jury returned its verdict, a bench conference was held off record due to the trial court's discovery that petitioner's habitual felon indictment was marked "NOT A TRUE BILL." Id. At the state's request, the court continued judgment and sentencing to allow the state to obtain a superseding habitual felon indictment. Id. The grand jury returned a superseding habitual felon indictment on April 17, 2018. Id. Petitioner was arraigned on the charge of attaining the status of a habitual felon on April 20, 2018. Id. On May 21, 2018, a trial was held on petitioner's status as a habitual felon, but a mistrial was declared when a juror left for a family emergency. Id. at 287–88. A second trial was held from July 16 to 17, 2018, and the jury found petitioner guilty of attaining the status of habitual felon. Id. at 288. The trial court entered judgment on the jury verdicts and sentenced petitioner to 115 to 150 months' imprisonment on both the underlying charges and the charge of attaining habitual felon status. Id. Petitioner appealed and was appointed counsel. Id.

On appeal at the North Carolina Court of Appeals, petitioner argued "the trial court lacked subject matter jurisdiction to sentence him as a habitual felon because the original habitual felon indictment was marked 'not a true bill' by the grand jury foreman," and "the trial court abused its discretion when it granted the State's request for a continuance upon the trial court's discovery that the indictment charging [petitioner] as a habitual felon was so marked." Id. at 287. On February 18, 2020, the North Carolina Court of Appeals concluded the trial court did not err. Id. at 291. The majority held, "The trial court retained jurisdiction at the moment it discovered the State's habitual felon indictment error. The State thus could still and, in fact, did seek to rectify its mistake by requesting a continuance and procuring a valid indictment." Id. at 290–91. However, a dissenting opinion noted the dissenting judge would have ruled that the habitual felon

2

indictment was nonexistent, rather than defective, and that the state could not request a continuance to get a true bill of indictment, nor could the trial court grant one, when no indictment existed in the first place. Id. at 291. Petitioner appealed to the North Carolina Supreme Court. State v. Hodge, 857 S.E. 2d 132 (N.C. 2021).

On May 5, 2021, the North Carolina Supreme Court remanded the case to the trial court for findings of fact on the following questions:

1) Was there a true bill for habitual felon indictment dated 7 November 2017?

2) Pursuant to N.C.G.S. § 15A-628(c), if there was a true bill, was it returned by the foreman of the grand jury to the presiding judge in open court?

3) Pursuant to N.C.G.S. § 15A-628(d), if there was a true bill, did the clerk keep a permanent record of it along with all matters returned by the grand jury to the judge?

4) If there was a true bill, was defendant properly served with it?

Id. at 133.

On June 25, 2021, the trial conducted an evidentiary hearing, and on August 4, 2024, the trial court filed an order making findings of fact and answering the above listed questions in the affirmative. State v. Hodge, 861 S.E. 2d 561, 561 (N.C. 2021); Pet'r Supp. Doc. [D.E. 1-1] at 65). On August 27, 2021, the Supreme Court of North Carolina concluded the record had been duly supplemented and remanded the case to the Court of Appeals "for the limited purpose of reevaluating the opinion of the Court of Appeals in this case in light of the additional findings of fact which were not available for consideration by the Court of Appeals at the time of the issuance of its opinion." Hodge, 861 S.E. 2d at 561. On December 21, 2021, the Court of Appeals held petitioner "received a fair trial, free from prejudicial error." State v. Hodge, 865 S.E. 2d (Table), 2021 WL 6015753, at *3 (N.C. App. 2021).

3

On September 14, 2022, petitioner filed a pro se motion for appropriate relief ("MAR") in Wake County Superior Court arguing: (1) there was insufficient evidence to support a conviction; (2) the habitual felon indictment was insufficient; and (3) he received ineffective assistance of counsel. (Pet'r Supp. Doc. [D.E. 1-2] at 27–127). Petitioner's MAR was denied on November 14, 2022. (Id. at 139–44). Petition filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the trial court's denial. (Id. at 147–61). On February 29, 2024, the Court of Appeals denied the petition. (Id. at 163).

On March 18, 2024, petitioner placed the instant petition into the prison mail system. (Pet. [D.E. 2] at 14). The petition was filed April 8, 2024. Petitioner challenges his conviction on the following bases: (1) the state presented insufficient evidence of obtaining property by false pretenses and misdemeanor possession of stolen goods at trial ("ground one"); (2) the habitual felon indictment supporting his conviction was insufficient ("ground two"); (3) the indictment charging obtaining property by false pretenses and possession of stolen goods was insufficient ("ground three"); and (4) appellate counsel was ineffective because she failed to challenge the sufficiency of the evidence on direct appeal and failed to challenge the indictment for obtaining property by false pretenses and possession of stolen goods ("ground four"). (Pet. [D.E. 2] at 5-10, 16–19).

Respondent filed the instant motion for summary judgment on May 21, 2024, arguing petitioner's claims are procedurally defaulted, not cognizable on federal habeas review, and meritless. In support, respondent relied on memorandum of law, statement of material facts, and appendix of exhibits thereto, comprised of state court records. Petitioner responded in opposition,

4

relying on an incorporated memorandum of law and exhibits consisting of state court records and communications with his attorney.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to petitioner. Over the course of a few weeks in April 2017, an individual broke into three different apartments in the same vicinity in Raleigh, North Carolina, stealing televisions, video game consoles, and video games. (Resp't Ex. 2 [D.E. 10-2] at 166–71, 190–96, 308–13; Resp't Ex. 4 [D.E. 10-4] at 482–89, 496–98). That same month, petitioner sold a television and a PlayStation console to Nicole Burnett ("Burnett") out of the back of his car. (Resp't Ex. 3 [D.E. 10-3] at 348-58). On April 25, 2017, law enforcement traced a stolen television and PlayStation console to Burnett's home, and she gave them petitioner's contact information as the person who sold her the items. (Id. at 352, 354). Law enforcement confiscated the items and returned them to their owner. (Resp't Ex. 4 [D.E. 10-4] at 554–56).

On April 11, 2017, petitioner sold a video game to Arrow Pawn on Crabtree Boulevard in Raleigh. (Resp't Ex. 3 [D.E. 10-3] at 333, 395–400). He presented his driver's license and represented himself as the lawful owner of the game. (Id. at 401, 407). The transaction was recorded on surveillance video maintained by Arrow Pawn. (Id. at 327–33). The video game matched one of the games stolen from one of the apartments. (Resp't Ex. 4 [D.E. 10-4] at 516-19).

On April 24, 2017, petitioner also sold five video games to Picasso Pawn on South Saunders Street in Raleigh. (Resp't Ex. 3 [D.E. 10-3] at 419–20, 424). Petitioner represented that he owned the games, and the pawnshop bought them. (Id. at 424–25). The transaction was recorded on a surveillance video system maintained by Picasso Pawn. (Id. at 418–22). Four of

5

the video games matched those stolen from one of the apartments, and the fifth video game matched one stolen from another one of the apartments. (Resp't Ex. 4 [D.E. 10-4] at 519–20, 536). The owner of the four video games testified he had the habit of tucking the receipt into the case when he bought used video games. (Resp't Ex. 3 [D.E. 10-3] at 314–17). Law enforcement found a receipt tucked into one of the four games showing that two of the four games were bought on November 10, 2015, from GameStop, a purchase that the owner confirmed he made. (Id. at 315–16; Resp't Ex. 4 [D.E. 10-4] at 539).

On April 27, 2017, law enforcement spoke with petitioner about the break-ins, and petitioner denied selling the television and PlayStation to Burnette. (Resp't Ex. 4 [D.E. 10-4] at 541). The next day, petitioner admitted selling some video games to pawnshops and claims he found them in a park. (Id. at 547–48).

No evidence was presented at trial that petitioner broke into any property, stole any property, or knew the games he found and pawned were stolen.[2] (Pet. [D.E. 2] at 5, 16).

## COURT'S DISCUSSION

A.     Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving

---

[2] Petitioner maintains a law enforcement witness, Detective Braswell ("Braswell"), admitted to having no evidence against petitioner in his trial testimony. (Pet. [D.E. 2] at 16). This is belied by Braswell's testimony where he recounts his investigation into the breaking and enterings and petitioner's connections to the stolen items. (See Resp't Ex. 4 [D.E. 10-4] at 42–128).

6

party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

B.  Analysis

1.  Procedural Default

Respondents argue grounds one and three are procedurally defaulted. (Resp't Mem. [D.E. 11] at 7–13). The court agrees. As noted above, ground one challenges the sufficiency of the evidence presented at trial, and ground three challenges the sufficiency of the indictment charging obtaining property by false pretenses and possession of stolen good.

Absent a valid excuse, a state prisoner must exhaust all available state-court remedies before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default"). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

7

To satisfy the exhaustion requirement, petitioner must "fairly present" his claims to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971); Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). A claim is "fairly presented" if petitioner presents the "substance of his federal habeas corpus claim" to the state court, including "both the operative facts and the controlling legal principles." Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) (quotations and citation omitted).

A North Carolina prisoner may satisfy this exhaustion requirement by directly appealing the conviction to the NCCOA and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a motion for appropriate relief ("MAR") and then petitioning the NCCOA for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1415, 15A-1422.

"The exhaustion requirement is not satisfied if petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.) (citation omitted), cert. denied sub nom. Breard v. Greene, 523 U.S. 371 (1998). Petitioner bears the burden of proving that a claim was exhausted. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994), cert. denied, 513 U.S. 1047 (1994).

Here, petitioner did not raise grounds one and three on direct appeal. See Hodge, 840 S.E. 2d at 287. Thus, they are not exhausted.

Procedural default doctrine, a corollary to the exhaustion requirement, generally precludes a federal court from reviewing the merits of a claim the state court found to be procedurally barred based on independent and adequate state grounds. See Martinez v. Ryan, 566 U.S. 1, 10 (2012); Dretke v. Haley, 541 U.S. 386, 392 (2004); Coleman v. Thompson, 501 U.S. 722, 747–48 (1991); Rose v. Lundy, 455 U.S. 509, 522 (1982); Breard, 134 F.3d at 619 ("A procedural default occurs

8

when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quotation omitted)).

A state rule is "adequate" if it is firmly established and consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000), cert. denied, 531 U.S. 1089 (2001), and "independent" if the rule does not depend upon a federal constitutional ruling, see Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

> A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court. "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."

Baker, 220 F.3d at 288 (citation omitted).

For the court to review a procedurally defaulted claim, petitioner must demonstrate either cause and prejudice resulting from the alleged violation of federal law, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Id.; see Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021). A petitioner shows cause by establishing that something external to him prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See United States v. Frady, 456 U.S. 152, 167–68 (1982).

Section 15A-1419(a)(3) of the North Carolina General Statutes provides that a MAR shall be denied when a defendant is in an adequate position to have raised the claim on appeal but did not do so. Section 15A-1419(a)(3) is an independent and adequate state procedural bar. See

9

Lawrence v. Branker, 517 F.3d 700, 714–15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). A federal habeas court may not review the merits of a procedurally barred constitutional claim absent cause and prejudice or a miscarriage of justice. See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

Because petitioner failed to raise grounds one and three on direct appeal, despite being able to do so, it is clear the claim would be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) if he now attempted to present this claim in a MAR to the state court. See Breard, 134 F.3d at 619; Baker, 220 F.3d at 288. Accordingly, this claim is procedurally defaulted. See Lawrence, 517 F.3d at 714–15; McCarver, 221 F.3d at 588–89. Further, because petitioner has neither shown cause and prejudice for this procedural default, nor a fundamental miscarriage of justice, cf. Coleman, 501 U.S. at 750, the court's consideration of this ground for relief is barred, see Brown, 319 F.3d at 169; Baker, 220 F.3d at 288.

Petitioner argues ground three is not procedurally defaulted where he combined issues raised in ground two and ground three in his MAR. (Pet'r Resp. [D.E. 16] at 3). However, a review of the MAR reveals petitioner only addressed the sufficiency of the habitual felon indictment and not the sufficiency of the indictment charging obtaining property by false pretenses and possession of stolen goods. (See Pet'r Supp. Doc. [D.E. 1-2] at 70–74). Thus, the court finds petitioner's argument unpersuasive.

2. Cognizability

Respondent next contend grounds two and three, challenging the underlying indictments, are not cognizable on federal habeas review. (Rep't Mem. [D.E. 11] at 13–14). There is no federal constitutional requirement for an indictment in a state criminal proceeding. Hartman v.

10

Lee, 283 F.3d 190, 195 & n.5 (4th Cir. 2002). Instead, all that is constitutionally required is that the defendant receive adequate notice of the charges in order to allow him to prepare a defense. Id. (citing Cole v. Arkansas, 333 U.S. 196, 201 (1948)). Furthermore, a defect in the indictment does "not deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630 (2002).

The court has reviewed the indictments and finds they provide sufficient notice consistent with Cole. (See Resp't Ex. 1 [D.E. 10-1] at 17–21; 46–47). To the extent petitioner argues he was not provided sufficient notice to prepare a defense regarding attaining habitual felon status, the superseding habitual felon indictment was returned on April 17, 2018, and petitioner was arraigned on April 20, 2018. Hodge, 840 S.E. 2d at 287. His habitual felon trial did not proceed until May 21, 2018, and no continuance was requested by defense. Id. at 287–88. Given the time span and his arraignment, petitioner was had proper notice of the habitual felon indictment allowing him to prepare a defense.

Accordingly, petitioner fails to show that the state court's resolution of his claims challenging the indictments of the state trial court were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. § 2254(d).

    3.    Merits

        a.    Ground One – Insufficient Evidence to Support Conviction

As noted, petitioner contends there was insufficient evidence to support his convictions for obtaining property by false pretenses and misdemeanor possession of stolen goods. (Pet. [D.E.

11

2] at 5, 16–17). The standard of review for claims of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). The essential elements for obtaining property by false pretenses consists of the following: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." State v. Cronin, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980); N.C. Gen. Stat. § 14-100(a). "[A]n indictment must allege every element of an offense." State v. Kelso, 187 N.C. App. 718, 722, 654 S.E.2d 28, 31 (2007). The elements of possession of stolen goods are: "(1) possession of personal property; (2) which has been stolen; (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose." State v. Tanner, 695 S.E.2d 97, 100 (N.C. 2010) (internal quotation marks omitted); N.C. Gen. Stat. § 14-71.1.

Further, under North Carolina law, the doctrine of recent possession provides, "upon an indictment for larceny, possession of recently stolen property raises a presumption of the possessor's guilt of the larceny of such property." State v. Maines, 273 S.E.2d 289, 293 (N.C. 1981). "The presumption or inference arising from recent possession of stolen property 'is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt.'" Id. (quoting State v. Baker, 196 S.E. 829, 830 (N.C. 1938)).

Importantly, "[w]hen the doctrine of recent possession applies in a particular case, it suffices to repel a motion for nonsuit and defendant's guilt or innocence becomes a jury question." Id.

Here, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of obtaining property by false pretenses and misdemeanor possession of stolen goods beyond a reasonable doubt under North Carolina law. Petitioner possessed stolen items shortly after they were stolen and sold them to other people and pawnshops. (Resp't Ex. 3 [D.E. 10-3] at 314–16, 327–33, 350–58; 397–407; Resp't Ex. 4 [D.E. 10-4] at 516–20, 536–39, 554–56). When selling to the pawnshops, petitioner falsely claimed he was the lawful owner of the property. (Resp't Ex. 3 [D.E. 10-3] at 410, 407, 424–25). Accordingly, ground one is meritless.

    b.  Ground Three – Insufficient Indictment Charging Obtaining Property by False Pretenses and Possession of Stolen Goods

Petitioner argues the indictment was insufficient because it did not identify the five video games sold to Picasso Pawn and did not specify what stolen goods belonged to which of the three lawful owners listed in the indictment. (Pet. [D.E. 2] at 8–9, 18). Assuming such a claim is cognizable on federal habeas review, such a claim is meritless. As provided above, there is no requirement for an indictment in a state criminal proceeding. Hartman, 283 F.3d at 195 & n.5. A defendant need only be provided adequate notice of the charges. Id. Cole, 333 U.S. at 201. Furthermore, "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). No such unfairness occurred here.

13

From the language used in the indictment, the record shows petitioner received adequate notice of the charges of obtaining property by false pretenses and possession of stolen goods to allow him to prepare a defense. (See Resp't Ex. 1 [D.E. 10-1] at 21). The information provided put petitioner on notice as to the charges, and no defects existed that rendered the state court criminal proceeding "egregiously unfair." (See id.). Had any error existed, it was non-jurisdictional, non-prejudicial, and harmless. See, e.g., United States v. Cotton, 535 U.S. 625, 630–31 (2002). Accordingly, this claim lacks merit.

        c.        Ground Four – Ineffective Assistance of Counsel

Ground four asserts that petitioner's appellate counsel was infective because she failed to challenge the sufficiency of the state's evidence and the indictment for obtaining property by false pretenses and possession of stolen goods on appeal. (Pet. [D.E. 2] at 10–11). This claim is meritless.

The Sixth Amendment right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-prong test. First, a petitioner must show that counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. at 688. The court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Petitioner must overcome "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance" and establish "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed [him] by the Sixth Amendment." Harrington v. Richter, 562 US 86, 104 (2011). For the second prong,

14

petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id.

As addressed above, both underlying claims forming the basis for ground four are meritless, and petitioner cannot demonstrate that his attorney acted unreasonably in failing to raise the issues on appeal. See Sharpe v. Bell, 593 F.3d 373, 383 (4th Cir. 2010); Moody v. Polk, 408 F.3d 141, 151 (4th Cir.2005). For this same reason, petitioner also fails to demonstrate the outcome of the proceedings would have been different.

C.   Certificate of Appealability

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further, the court denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## CONCLUSION

For the reasons discussed above, the court GRANTS respondent's motion for summary judgment [D.E. 8] and DENIES a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of March, 2025.

Richard E Myers II
RICHARD E. MYERS, II
Chief United States District Judge